CY T. HAINEY, ESQ. (State Bar No. 030634)
Attorney/Owner
Hilltop Law Firm
P.O. Box 9096
Phoenix, Arizona 85068
Telephone and Fax - (602) 466-9631
cy@hilltoplawfirm.com

Of Counsel to:
Credit Repair Lawyers of America
39111 Six Mile Road, Suite 142,
Livonia, MI 48152
Telephone: (248) 353-2882
Facsimile: (248) 353-4840

*Attorneys for Plaintiff,*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Conrad Mitchell,<br><br>Plaintiff,<br><br>vs.<br><br>JP Morgan Chase Bank, N.A.,<br><br>Defendant. | Case No.: 4:22-cv-00435-RM<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

1

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ 2
INTRODUCTION .......................................................................................................... 4
STANDARD OF REVIEW ............................................................................................ 5
LAW ................................................................................................................................ 7
   The Fair Credit Billing Act. ....................................................................................... 7
   Billing Error Procedures. ........................................................................................... 7
   Unauthorized Use of a Credit Card. .......................................................................... 8
      Card holder Notice to Bank of Unauthorized Use**Error! Bookmark not defined.**
      Investigation Procedures ................................. **Error! Bookmark not defined.**
ARGUMENTS ................................................................................................................ 9
   CHASE FAILED TO CONDUCT A REASONABLE INVESTIGATION IN RESPONSE TO PLAINTIFF'S UNAUTHORIZED USE CLAIMS .................... 9
      Plaintiff immediately and repeatedly notified chase of his disputes. .................. 9
      Chase Could Not Have Used its Voice ID System in this Case**Error! Bookmark not defined.**
      Chase admitted that its investigation could not tell if the Bogus Charges were incurred by the Plaintiff or an identity thief. .... **Error! Bookmark not defined.**
PLAINTIFF'S EMOTIONAL AND FINANCIAL DAMAGES CAUSED BY CHASE. .......................................................................................................................... 15
   Financial Damages .................................................................................................. 15
   Credit Damages ....................................................................................................... 16
   Physical and Emotional Damages .......................................................................... 16
CONCLUSION ............................................................................................................. 17

# INDEX OF AUTHORITIES

**Cases**
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ............................... 7
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ................................................. 7
*Gorman* at 1155-1156 ............................................................................................. 10
*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009) ................ 10
*Rigby v. FIA Card Servs.,* N.A., 490 Fed. Appx. 230, 235 (11th Cir. 2012) ............ 8
*United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962) .......................................... 7

**Statutes**
*15 U.S.C. §§ 1666–1666j* .......................................................................................... 8

**Rules**
*Fed. R. Civ. P. 56(c)* ................................................................................................. 6
*Fed. R. Civ. P. 56(c)(1), (3)* ...................................................................................... 7

**Regulations**
*Official Interpretations § 1026.12(b)(1)-2* .............................................................. 9
*Official Interpretations § 1026.12(b)(3)-2* .............................................................. 9
*Official Interpretations § 1026.12(b)(3)-3* .............................................................. 9
*Reg. Z § 1026.12(b)(3)* ............................................................................................ 9

# INTRODUCTION

On the morning of August 12, 2022, Plaintiff Conrad Mitchell ("Plaintiff" or "Mitchell") awoke at home in Tucson, to an inbox with approximately 200 emails. Statement of Material Facts ("SUF") 2, 3. Amongst these emails were two alerts from Defendant Chase ("Defendant", "Chase" or "the Bank") regarding two unauthorized charges to his credit card account. SUF 4. The first of these email alerts came into Mr. Mitchell's email system at 6:10 a.m., asking him if he had authorized a charge to Sea World for $1,756.23. SUF 5. He immediately responded to that email indicating that he did not authorize this charge. SUF 7.

The second email alert he received asked if he authorized a charge of $1,530 to Viator/Trip Advisor. SUF 8. Again, he immediately responded to that email indicating that he did not. SUF 10.

He called Chase that morning to discuss these bogus transactions. SUF 17. But he did not reach Chase before the Fraudster had called the Bank. SUF 11-14. In the first call ("Call 1"), the Fraudster, posing as Mr. Mitchell, inquired why the charges had been declined. SUF 11a. Without authenticating the caller, the Chase agent authorized the charges. SUF 11b, 11c.

The Fraudster called back a second time that morning, ("Call 2") SUF 12. This time, Chase attempted to authenticate the Fraudster as Mr. Mitchell. SUF 14. Chase

4

asked the Fraudster for the maiden name of Mitchell's mother. The Fraudster made three different guesses, all of which were incorrect. The Fraudster hung up. *Id*.

Finally, Mr. Mitchell called Chase ("Call 3"). In this conversation, Chase authenticated the caller as Mr. Mitchell. SUF 17. Chase asked Mr. Mitchell if he had called in previously. Mr. Mitchell denied any of the previous calls. SUF 17c. In fact, Mr. Mitchell had never called Chase before. *Id*. Together, Mr. Mitchell and Chase reviewed his credit card statement. Mitchell identified legitimate charges and the unauthorized ones from Viator/Trip Advisor and Sea World. SUF 17b. In that conversation, Chase asked him to destroy his credit card and that it would send him a new one. SUF 17h.

In a letter dated August 12, 2022, Chase acknowledged Mr. Mitchell's disputes. Ex 6.

On September 17, 2022, Chase declined Mr. Mitchell's disputes to the Bogus Charges. Ex 7.

**STANDARD OF REVIEW**

A court renders summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of informing the court of the basis for its

5

belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence. Celotex, 477 U.S. at 323. However, all evidence and reasonable inferences made must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts that demonstrate a genuine issue of material fact such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. Id. at 249–50. In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Further, a court has no duty to search the record for evidence of a genuine issue. *Fed. R. Civ. P. 56(c)(1), (3)*.

# LAW

## *THE FAIR CREDIT BILLING ACT.*

The Fair Credit Billing Act ("FCBA") is part of the Truth in Lending Act ("TILA"). *15 U.S.C. §§ 1666–1666j.* The billing error procedures are cited at §1666 and §1666a. These procedures that are popularly referred to as the "Fair Credit Billing Act."

## *BILLING ERROR PROCEDURES.*

To state a billing error claim, the Claimant must allege: (1) the existence of a billing error; (2) timely notification of the billing error; and (3) failure of the issuer to comply with the procedural requirements of §1666. *Rigby v. FIA Card Servs.,* N.A., 490 Fed. Appx. 230, 235 (11th Cir. 2012). The procedures apply if the billing error dispute is of the category involving an extension of credit for goods or services that are not accepted by the consumer or not delivered to the consumer as agreed. *Official Interpretations §1026.13(a)(3)-2*.

The Fair Credit Billing Act and Regulation Z define six types of errors as billing errors. One such billing error An unauthorized extension of credit, i.e., an extension of credit to someone without actual, implied, or apparent authority to use the credit card or account, even if the cardholder received benefit from the unauthorized use. *Reg. Z § 1026.13(a)(1)*. See also *Reg. Z § 1026.12(b)*.

In this case, this is precisely the billing error dispute that was made by Mr. Mitchell. He never ordered goods/services or tickets from Viator/Trip Advisor nor from Sea World. These charges were not authorized by him.

## *UNAUTHORIZED USE OF A CREDIT CARD*

### *CARD HOLDER NOTICE TO BANK OF UNAUTHORIZED USE*

The cardholder may give the card issuer notice of the loss, theft, or possible unauthorized use of the credit card. *Official Interpretations § 1026.12(b)(3)-2*. Once notice is given, the customer's liability for unauthorized use is frozen at the amount of unauthorized use, or $50, whichever is less. *Official Interpretations § 1026.12(b)(1)-2*. The notice requires the card issuer to initiate certain investigative and other procedures.

The cardholder notice to the bank can be oral or in writing. *Reg. Z § 1026.12(b)(3)*. The notice need not be given at the address or telephone number provided by the card issuer for that purpose. It does not have to comply with billing error resolution procedures as to timing or form. *Official Interpretations § 1026.12(b)(3)-3*.

### *INVESTIGATION PROCEDURES*

Upon receipt of notice by a consumer of unauthorized use, the creditor is required to conduct a "reasonable" investigation of an unauthorized use claim. *Official Interpretations § 1026.12(b)(3)-3* ("written notification and time limit

requirements of [billing error procedures] do not affect the [unauthorized use] protections.").

In *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009), the Court held that "By its ordinary meaning, an 'investigation' requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute. A provision that required only a cursory investigation would not provide such protection; instead, it would allow [furnishers] to escape their obligations by merely rubber stamping their earlier submissions, even where circumstances demanded a more thorough inquiry. *Gorman* at 1155-1156.

The FCBA places the burden of proof on the credit card issuer to show that the disputed charges were authorized. *15 U.S.C.S. § 1643(b)*.

### ARGUMENTS

***CHASE FAILED TO CONDUCT A REASONABLE INVESTIGATION IN RESPONSE TO PLAINTIFF'S UNAUTHORIZED USE CLAIMS***

**PLAINTIFF IMMEDIATELY AND REPEATEDLY NOTIFIED CHASE OF HIS DISPUTES.**

Chase's email alerts to Mr. Mitchell were received in his inbox on the morning of August 12, 2022. Ex 3, 4. As soon as he saw each of these email alerts regarding unauthorized charged from Viator and Sea World, he immediately replied to Chase, as requested, stating that these charges were unauthorized. SUF 7, 9. He informed Chase of the unauthorized nature of these charges that very morning. *Id*. This should have been as much as Mr. Mitchell needed to do to dispute these unauthorized charges

9

because each email plainly asked "Do you recognize this charge?" In each email, itself, were two links as follows:

**Do you recognize this charge?**

**Yes, I Recognize It**
- Your card remains active.
- If a purchase was declined, you will not be charged unless you try again.

**No, Something's Wrong**
- We will close your current card and send you a new one.
- If you need to speak with us, please call the number on the back of your card.

Mr. Mitchell clicked on the "No, Something's Wrong" button in response to each of these emails. SUF 7, 9. He notified Chase, via his email responses, that he disputed each of the Bogus Charges.

To be certain that he would not be held liable for these charges, he also called Chase that same morning. SUF 17. In that conversation, Chase informed him that someone posing as him, had called in earlier. SUF 17e. Mr. Mitchell informed Chase that he did not make those calls and had never called Chase before. SUF 17c. Together, Chase and Mr. Mitchell reviewed his credit card account. Mr. Mitchell identified the authorized transactions and the unauthorized ones as well. SUF 17b. At the conclusion of the conversation, Chase instructed him to destroy his current credit

card and that the unauthorized charges would be removed from his account.  SUF 17h.  Instead, Chase wrongfully confirmed these charges as belonging to him.  Ex 7.

Plaintiff put Chase on notice, immediately and repeatedly, that these two bogus charges did not belong to him.  There was nothing more that he could do to have provided Chase with any faster of a response to its email alerts.  The Sea World Alert came in to Mr. Mitchell's email account at 6:10 a.m. on August 12, 2022 .  Ex 3.  The Viator/Trip Advisor Alert arrived at 6:33 a.m.  Ex 4.  Mr. Mitchell immediately replied to each of these emails as requested by Chase.  He also called Chase that same morning.  SUF 17.

### *CHASE COULD NOT HAVE USED ITS VOICE ID SYSTEM IN THIS CASE.*

Chase testified that it uses a Voice ID System.  SUF 41.  See Chase's website at https://www.chase.com/personal/voice-biometrics.  When a consumer calls Chase's customer service center, Chase records a voiceprint that is unique to the Consumer and created from more than 100 different physical & behavioral characteristics such as pitch, accent, shape of your mouth and vocal tract. SUF 42.  The voiceprint similar to a finger print, which verifies callers identities, using their voices.  SUF 43.  It sounds like really good technology, but it was not possible to have been used in this case for the following reasons:

11

First, in order to capture a consumer's voice print, the consumer must first call Chase's customer service center. SUF 42 and Ex 11. Just like a fingerprint, Chase can only associate a voice print with a particular person to make a positive identification, after it captures the voice print. In this case, the undisputed testimony shows that Mr. Mitchell had never called Chase before August 12, 2022. SUF 17c. Chase admits that it has no recording of Mr. Mitchell authenticating the bogus charges. SUF 47. Chase had no voiceprint from Mr. Mitchell and thus, could not possibly have used the Voice ID system to compare his voiceprint to any recorded conversations, including Call 1 and Call 2.

Secondly, Chase's FRCP 30(b)(6) witness needed no Voice ID system to determine that the caller in Calls 1 and 2, was a distinctly different voice than in Call 3. SUF 40a. The caller in Calls 1 and 2 was not authenticated. Indeed, in Call 2, the caller could did not even know his own mother's maiden name. He hung up after failing to be authenticated by Chase. In Call 3, the only call in which Mr. Mitchell's identity was authenticated by Chase, the voice was "distinctly different" than in Calls 1 and 2, according to Chase. SUF 40a.

Third, Chase admitted that it did not even consider the three voice recordings in this case in the course of investigating Mr. Mitchell's dispute. It only considered these recordings *after* Plaintiff filed this lawsuit. SUF 40b, c. This, by itself, shows

that Chase failed to conduct a reasonable investigation as it ignored evidence that it had in its own possession.

Finally, Chase admitted that its Voice ID System, can be spoofed and fooled. It is not infallible. SUF 41. As these charges were the work of an identity thief, it stands to reason that:

a. The Fraudster would have the proper information to misidentify himself as Mr. Mitchell, to merchants.

b. Chase's investigation should have answered the question as to whether the Bogus Charges were authorized by Mr. Mitchel or incurred by any identity thief. However, its investigation was not geared to answer this question. SUF 48. Instead, Chase only required each merchant to have Plaintiff's name, billing address and telephone number or email address (in addition to his credit card number) to verify his identity and to determine that he "benefited" from each transaction. SUF 31, 36, and 37.

In summary, Chase bears the burden of proving that Mr. Mitchell authorized these charges. It cannot and has not done so in this case.

***CHASE ADMITTED THAT ITS INVESTIGATION COULD NOT TELL IF THE BOGUS CHARGES WERE INCURRED BY THE PLAINTIFF OR AN IDENTITY THIEF.***

Amazingly, Chase admitted that its investigation could not tell if the Bogus Charges were incurred by the Plaintiff or an identity thief. SUF 48. This is mind

boggling since the gravamen of his dispute was that these two unauthorized charges were the product of identity theft.

Chase's investigation, such as it was, failed to answer this very simple question. It failed to make an inquiry likely to turn up information about the underlying facts. The information that it failed to consider includes:

a. Plaintiff immediately replying to each email alert from Chase, informing it that he did not incur the disputed charges;  Ex 3 and 4, SUF 7 and 10;

b. Plaintiff immediately calling Chase, getting authenticated during that call ("Call 3") and informing it of the unauthorized charges;  SUF 17;

c. Plaintiff informing Chase in Call 3, that he had never called Chase before and verifying that the Calls 1 and 2 were from a Fraudster; SUF 17;

d. The caller in Calls 1 and 2[1] was not authenticated and had a different voice that Mr. Mitchell's voice in Call 3;

e. Chase refusing to even listen to the three calls as part of its investigation; SUF 40b, c.

f. Chase determining that the Plaintiff "received benefit" from the Charges due solely to a fraudster having Plaintiff's name, address and email address; SUF 31.

---

[1] Chase did not even find it remotely suspicious when in Call 2, the caller did not know his own mother's maiden name. SUF  40d.

    g. The IP address relied upon by Viator from which the purchase transaction originated was in California and not Arizona. SUF 27.[2]

In this case, Chase testified that it verified Plaintiff's name, address and email address with Viator and Sea World. It also testified that it relied on its Voice ID system, which the evidence now shows, was not possible. SUF 41-45. This was the entire substance of its investigation.

Chase's investigation fails to meet the Gorman Court's standard. The investigation was not an inquiry likely to turn up information about the underlying facts and positions of the parties, but rather, a cursory or sloppy review of the dispute. *Gorman* at 1147. For these reasons, Chase's investigation failed to comply with its statutory duty under the Fair Credit Billing Act.

## PLAINTIFF'S EMOTIONAL AND FINANCIAL DAMAGES CAUSED BY CHASE.

Plaintiff has suffered financial, credit, emotional and physical harm from the Bogus Charges that Chase has refused to reasonably investigate.

### *FINANCIAL DAMAGES*

Plaintiff is employed in the mortgage industry as a senior vice president of capital markets. SUF 51. Plaintiff's job is dependent upon his credit report. If he

---

[2] Chase admitted that after learning that the IP address originated in California, it no longer believed that the IP address was traceable to Plaintiff. SUF 32. This is the kind of investigation that should have been performed by Chase in its investigation, but was not.

15

does not pay his bills, he will be fired. SUF 52. Due to Plaintiff's job in the mortgage industry, he had no choice but to service the Bogus Charges for the past two years, on a monthly basis. SUF 53  This has caused him great stress and financial hardship. SUF 54.

## *CREDIT DAMAGES*

These Bogus Charges, which Plaintiff has been forced to service every month for the past two years due to Chase's refusal to reasonably investigate, have constantly been on his mind, causing him great stress. SUF 56.  These items on his credit card account have negatively affected his credit score by increasing his utilization, pushing it beyond his authorized limit. SUF 55.

Plaintiff's available credit on some of his other credit card accounts were lowered. In fact, both Wells Fargo and Citi owed Mr. Mitchell's available credit balances. SUF 59.

## *PHYSICAL AND EMOTIONAL DAMAGES*

Mr. Mitchell suffers from Cirrhosis of the liver. This has caused him great stress. SUF 56.   In 2022, Plaintiff treated with between 25-27 doctors for his Cirrhosis. SUF 58.  His health struggles have been aggravated by the increased stress visited upon him by Chase's failure to conduct a reasonable investigation into his dispute. SUF 57.

## CONCLUSION

Mr. Mitchell could not have notified Chase any quicker than he had in this case, of his unauthorized use claims. He notified Chase immediately by return email of the unauthorized nature of each of the charges. He also called Chase, which authenticated him as Conrad Mitchell. He personally and timely informed the Bank that these charges were unauthorized. In response, Chase failed to conduct any reasonable reinvestigation under the Fair Credit Billing Act or its implementing Regulation Z. Under the Fair Credit Billing, Chase bears the burden of proving that Mr. Mitchell authorized these charges. This is a bridge too far. The undisputed testimony from Mr. Mitchell is that he did not authorize these charges and he timely and quickly informed Chase. Chase merely relied upon each merchant having his name, address and telephone number in addition to his credit card information as proof that Mitchell had benefited from these transactions. It is as if Chase does not understand the concept of identity theft which has been rampant in the United States for many years now. Chase even admitted that its investigation was not geared to determine whether Mitchell or an identity thief incurred the Bogus Charges. Reasonable minds cannot differ that Chase failed to conduct a reasonable reinvestigation. Reasonable minds also cannot differ that Chase cannot bear the burden of proving that Mr. Mitchell did not authorize these charges.

Chase has caused Mr. Mitchell physical, emotional and financial damages along with credit damages.

Plaintiff prays that this court awards him:

1. Full credit for each of the Bogus charges;
2. Return of all payments made by Plaintiff towards servicing these bogus debts;
3. Credit for any and all interest charges related thereto;
4. General and special damages;
5. Costs of the action along with reasonable attorneys fees;
6. Any other relief that this Court deems just.

Respectfully submitted.

DATED: June 5, 2024

                    HILLTOP LAW FIRM

                    /s/ Cy T. Hainey
                    Cy T. Hainey
                    Attorneys for Plaintiff

**Proof of Service**

I, Cy T. Hainey, hereby certify that on June 7, 2024, I served a copy of the foregoing document upon all parties and counsel as their addresses appear of record via this Court's CM/ECF system.

                    /s/ Cy T. Hainey