**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Conrad Mitchell,<br><br>  Plaintiff,<br><br>v.<br><br>Chase Bank USA NA, et al.,<br><br>  Defendants. | No. CV-22-00435-TUC-RM<br><br>**ORDER** |

Pending before the Court is Plaintiff's Motion for Summary Judgment (Doc. 42) and Defendant JPMorgan Chase Bank, N.A.'s ("Defendant" or "Chase") Cross-Motion for Summary Judgment (Doc.46).[1]  The Motions are fully briefed. (Docs. 55, 57.)[2]

**I.    Background**

    **A.    Plaintiff's Billing Dispute**

Plaintiff had a credit card with Defendant that he used for personal use. (Doc. 43 at ¶ 1.) On August 12, 2022, Plaintiff received two emails from Defendant regarding two

---

[1] All record citations refer to the docket and page numbers generated by the Court's electronic filing system. The Court finds the pending Motions are appropriate for resolution without oral argument.

[2] Plaintiff filed a combined Response to Defendant's Cross-Motion for Summary Judgment and Response in support of Plaintiff's Motion for Summary Judgment. (Doc. 55.) Defendant argues that Plaintiff's Reply should be disregarded as untimely. (Doc. 57 at 5.)  Pursuant to Local Rule of Civil Procedure 56.1(d), a response to a motion for summary judgment is due within 30 days of service of the motion, and a reply in support of a motion for summary judgment is due within 15 days of service of the response. Although Plaintiff should have sought clarification, the Court finds that it was reasonable for Plaintiff to assume that he could file a combined Response/Reply within the deadline for responding to Defendant's Cross-Motion for Summary Judgment.  Accordingly, the Court finds excusable neglect for Plaintiff's failure to file his Reply within 15 days of service of Defendant's Response, and the Court will consider the Reply timely.

charges made to his credit card account. (*Id.* at ¶ 4.) The first email, sent at 6:10 a.m.[3], requested additional verification of a $1,756.23 charge from SeaWorld San Diego. (Doc. 47 at ¶ ¶ 5, 68.) Defendant asserts that at 6:12 a.m., it received verification of this transaction through its Voice Response Unit ("VRU") system,[4] which captured an inbound call from Plaintiff's phone number validating the charge. (*Id.* at ¶ ¶ 69-70.) The second alert, sent at 6:33 a.m., concerned a $1,530.00 charge to Viator Trip Advisor ("Trip Advisor") for Disneyland tickets. (*Id.* at ¶ 8, 72.)[5] Defendant claims that at 6:34 a.m., it received verification of this transaction via a phone call from Plaintiff's phone number. (*Id.* at ¶ 73.)

Plaintiff claims that he immediately responded to both emails, indicating that he did not authorize the charges. (Doc. 43 at ¶ ¶ 7, 10.) Defendant contends it did not receive a response to either email alert. (Doc. 47 at ¶ ¶ 7, 10.)

Around the time Defendant sent the email alerts, it received at least three phone calls from Plaintiff's phone number. (Doc. 43 at ¶ 11, 12; Doc. 47 at ¶ ¶ 11, 74.) During these calls, the callers spoke to representatives, and the conversations were recorded. (*Id.*) In one call made at 6:33 a.m., the caller asked why the charges to Trip Advisor and SeaWorld had been declined and sought to verify the charges. (*Id.*)[6] Defendant did not ask this caller for identifying information (Doc. 43 at ¶ 11; Doc. 43-5 at 5 ¶ ¶ 10-17), and the caller did not mention receiving emails from Defendant regarding these transactions (Doc. 43 at ¶ 11; Doc. 43-5 at 17 ¶ ¶ 7-10).

In a subsequent call from Plaintiff's phone number, Defendant attempted to

---

[3] All time refers to Arizona time.
[4] Defendant's VRU system is an automated verification method by which customers can call in from a phone number associated with their account and validate charges without speaking to someone by inputting the last four digits of the account number. (Doc. 47 at ¶ 70.) Unlike Chase's Voice ID system, which requires a customer to speak out loud with customer service and uses voice recognition technology, the VRU system does not use voice recognition technology. (*Id.*) Only the VRU system was used in this case. (*Id.* at ¶¶ 44, 70.)
[5] Plaintiff also disputed charges paid to Legoland. (Doc. 43 at ¶ 17(g).) Chase provided Plaintiff with a credit for this charge, and it is not at issue in this case. (*Id.* at 5, n.2; Doc. 46 at 3 n.1.) It is unclear why the Legoland charge was treated differently than the two charges at issue here.
[6] Plaintiff claims this caller and the caller in the subsequent call was a "Fraudster." (Doc. 43 at ¶ ¶ 11-12.)

1 authenticate the caller's identity by asking for Plaintiff's mother's maiden name. (Doc.
2 43 at ¶ 13.) The caller failed the verification question. (Doc. 47 at ¶ 14.)

3 After this call, Defendant received another call from Plaintiff's phone number,
4 during which: (1) Defendant authenticated the caller as Plaintiff via text message; (2) the
5 caller identified the charges to SeaWorld and Trip Advisor as unauthorized; (3) the caller
6 denied ever having called Defendant before; and (4) Defendant informed Plaintiff that
7 someone had called earlier that day, posing as him, but had failed the security checks.
8 (Doc. 43 at ¶ 17; Doc. 47 at ¶ 74.) On the same day, Defendant sent Plaintiff a letter
9 acknowledging the billing dispute. (Doc. 43 at ¶ 18.)

10 **B.     Defendant's Investigation**

11 As part of its investigation, Defendant notified SeaWorld and Trip Advisor of the
12 dispute. (Doc. 43 at ¶¶ 20, 33.) In response, SeaWorld provided documentation showing
13 that the tickets were purchased under Plaintiff's name, billed to his home address, and
14 sent to his email. (Doc. 47 at ¶ 78.) The purchase included 32 tickets, all associated with
15 the last name "Mitchell." (*Id.* at ¶¶ 78-79.) Plaintiff testified during his deposition that
16 he did not recognize anyone besides himself who was listed in the SeaWorld purchase.
17 (Doc. 43 at ¶ 39.)

18 Trip Advisor advised that the dispute was invalid and provided evidence that the
19 tickets were purchased using Plaintiff's name, billed to his home address, and sent to his
20 email address. (Doc. 43 at ¶ 26; Doc. 47 at ¶ 84.) Out of the six guest names on the
21 purchased tickets, three had the last name "Mitchell," including Plaintiff. (Doc. 47 at ¶
22 85.) Plaintiff, however, asserts that he does not know anyone with the names reflected on
23 three of the tickets, and one of the ticketholders has the name of Plaintiff's late
24 grandfather. (Doc. 43 at ¶¶ 21-24.) Additionally, he also states that he has not been to
25 Disneyland since he was a child. (*Id.* at ¶ 25.) Trip Advisor also reported that it
26 identified Plaintiff's IP address as originating in Sacramento, California. (*Id.* at ¶¶ 26-
27 27.) In response, Plaintiff asserts that he was at his home in Tucson, Arizona, on the date
28

the tickets were purchased.  (*Id.* at ¶ 28.)[7]

Following its investigation, Defendant concluded the charges were not fraudulent and reinstated them on Plaintiff's account.  (*Id.* at ¶ 29.)  Defendant states that its conclusion was based on (1) the merchants' assertion that the charges were valid, (2) that Plaintiff's phone number was used to verify the charges through its VRU system, (3) that the tickets were purchased with Plaintiff's email account, and the billing information and phone number matched Plaintiff's, and (4) the tickets were made out to persons with the last name "Mitchell."  (Doc. 47 at ¶ ¶ 31, 87.)  Defendant informed Plaintiff of its decision via a letter.  (*Id.* at ¶ 88-89.)  Plaintiff maintains that he did not benefit from the charges.  (Doc. 43 at ¶ 30.)

During its deposition, Defendant's representative testified that Plaintiff's voice in the call in which he was authenticated sounded distinctly different from the voices of the callers who placed the previous two calls; Defendant did not examine or compare the voice recordings during its investigation into Plaintiff's billing dispute; this comparison was only conducted in the course of this litigation; and Defendant did not find it suspicious that a card user would not know his own mother's maiden name. (Doc. 43 at ¶ 40.)

Furthermore, Defendant testified that it has no voice recordings of Plaintiff validating the disputed charges.  (*Id.* at ¶ 47).  Since phone numbers can be spoofed, the VRU system is not infallible, and someone else could have called while using Plaintiff's phone number.  (Doc. 43-5 at 14 ¶ ¶ 4-14).  As part of its investigation, Defendant would not know if Plaintiff or an identity thief incurred the disputed charges.  (Doc. 43 at ¶ 48.)  Defendant no longer believes that Trip Advisor had proof that the IP address it attributed to Plaintiff was indeed his or traceable to him.  (*Id.* at ¶ 32.)  Defendant never asked Plaintiff about his location on the date the purchases were made.  (*Id.* at ¶ 49.)  Finally,

---

[7] Defendant asserts that although Plaintiff testified that he was in Tucson, Arizona, on August 12, 2022, there is evidence that the charges were made in "San Francisco, California," and that Plaintiff made the charges.  (Doc. 47 at ¶ 28.)  Defendant presumably means Sacramento, California, as Trip Advisor indicated.  (*See* Doc. 43 at ¶ 27.)

- 4 -

Plaintiff has no history of billing disputes or credit card abuse. (*Id.* 43 at ¶ 50).

### C. Plaintiff's Complaint and Procedural History

In his operative First Amended Complaint, Plaintiff alleges a single cause of action for violation of the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666, and Regulation Z issued thereunder. (Doc. 14 at 1-2.) Plaintiff specifically alleges that Chase "breached its duty to conduct a reasonable investigation into Plaintiff's dispute." (*Id.* at ¶ 17.)

Defendant responded to Plaintiff's Complaint by filing a Motion to Dismiss Pursuant to Federal Rule of Procedure 12(b)(6). (Doc. 17.) Defendant asserted that it was not liable under the FCBA because Plaintiff did not allege that he gave Defendant written notice of the billing dispute, as the statute requires. (*Id.*) The Court denied the Motion, finding that it is "reasonable to infer that Defendant waived the written-notice requirement by acknowledging and investigating Plaintiff's dispute and instructing Plaintiff to call if he had questions or saw additional unauthorized activity on his account." (Doc. 22 at 6.)

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a*); see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and to show (1) that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and (2) that the dispute is genuine, i.e., the evidence is such that a

reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248-50 (1986); *see also Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In evaluating a motion for summary judgment, the court must "draw all reasonable inferences from the evidence" in favor of the non-movant. *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002). If "the evidence yields conflicting inferences, summary judgment is improper, and the action must proceed to trial." *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

**III. Discussion**

Plaintiff moves for summary judgment on two claims: an Unauthorized Use claim under 15 U.S.C. § 1643 and an FCBA claim under 15 U.S.C. § 1666. (Docs. 42, 55.) Defendants, likewise, move for summary judgment on both these claims. (Docs. 46, 57.) The Court will address each claim in turn.

**A.     Plaintiff's Unauthorized Use Claim**

Plaintiff seeks summary judgment on an unauthorized use claim under 15 U.S.C. § 1643. (*See* Docs. 42, 55.)[8] Defendant argues that this claim should be dismissed because it was not raised previously, and Defendant did not receive fair notice of this claim. (Doc. 46 at 9-10.) In response, Plaintiff asserts that, under the liberal pleading standard set forth by Federal Rule of Civil Procedure 8, he was not required to specify the exact statutory basis for relief. (Doc. 55 at 14.) Plaintiff contends that the allegations stated in his Complaint are sufficient to state an unauthorized use claim. (*Id.* at 6.)

"A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations."

---

[8] While the Fair Credit Billing Act is codified at 15 U.S.C. § 1666, the Unauthorized Use statute is codified at 15 U.S.C. § 1643. The FCBA is implemented by 12 C.F.R. § 1026.13, and the Unauthorized Use statute is implemented by 12 C.F.R. § 1026.12.

- 6 -

1  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). Under Federal Rule
2  of Civil Procedure 8(a)(2), the allegations in a complaint must "give the defendant fair
3  notice of what the plaintiff's claim is and the grounds upon which it rests." *Pickern v.*
4  *Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (internal quotations
5  omitted). If a plaintiff fails to either plead a claim in his complaint or make his intention
6  of pursuing that theory known during discovery, he may be barred from asserting that
7  claim at summary judgment. *See Coleman*, 232 F.3d at 1292.

8        In *Coleman*, the plaintiffs clearly stated claims of disparate treatment under the
9  Age Discrimination Act in their complaints but sought to proceed on disparate impact
10 claims at the summary judgment stage. *Id.* In upholding the district court's dismissal of
11 the disparate impact claims, the Ninth Circuit held that the plaintiffs were either required
12 to (1) plead the additional disparate impact theory in their complaints, or (2) make known
13 during discovery their intention to pursue recovery on the disparate impact theory omitted
14 from their complaints. *Id.* at 1294; *see also Peralta v. Worthington Indus., Inc.*, No. 22-
15 15140, 2024 WL 287774, at *1 (9th Cir. Jan. 25, 2024) (upholding district court's denial
16 of plaintiff's motion for summary judgment where the plaintiff only pled negligence and
17 civil battery theories of product liability, but sought to raise a strict products liability
18 claim for the first time at summary judgment).

19       Here, Plaintiff's failure to plead the unauthorized use claim or disclose it during
20 discovery bars its assertion at summary judgment. *See Coleman*, 232 F.3d at 1294
21 ("Only if the defendants have been put on notice may the plaintiffs proceed on a disparate
22 impact theory at the summary judgment stage.") Because Plaintiff never properly raised
23 the unauthorized use claim before this stage of the litigation, the Court finds that allowing
24 the claim to proceed now would be improper and prejudicial to Defendant. Accordingly,
25 Plaintiff's Motion for Summary judgment on his unauthorized use claim is denied, and
26 Defendant's Cross-Motion for Summary Judgment on this claim is granted.
27 . . . .
28 . . . .

**B.    Plaintiff's FCBA Claim**

The FCBA, included in the Truth in Lending Act and implemented by Regulation Z, allows a consumer to request that a creditor correct a "billing error" when certain conditions are met. *See* 15 U.S.C. § 1666; 12 C.F.R. § 1026.13; *see also Rigby v. FIA Card Servs., N.A.*, 490 Fed. App'x 230, 234 (11th Cir. 2012). To succeed on an FCBA claim, a plaintiff must establish (1) the existence of a billing error; (2) timely notice of that billing error; and (3) the card issuer's failure to comply with the procedural requirements set forth in § 1666. *Rigby*, 490 Fed. App'x at 235.

The relevant FCBA provisions provide that if a borrower properly notifies the creditor of a billing error, the creditor must either (1) correct the error and credit the consumer's account, or (2) "after conducting a reasonable investigation…deliver to the consumer an explanation that sets forth the reasons for the creditor's belief that the billing error alleged by the consumer is incorrect." 12 C.F.R. § 1026.13(e), (f).[9]

In official guidance interpreting § 1026.13(f), the Consumer Financial Protection Bureau ("CFPB") has advised that "[t]he procedures involved in investigating alleged billing errors may differ depending on the billing error type." *See* Official Interpretation of 13(f) Procedures if Different Billing Error or No Billing Error Occurred ("Official Interpretation § 1026.13 13(f)").[10] Nevertheless, the CFPB has identified the following procedures as "steps that a creditor may take, as appropriate, in conducting a reasonable investigation" under § 1026.13(f):

> A. Reviewing the types or amounts of purchases made in relation to the consumer's previous purchasing pattern.
>
> B. Reviewing where the purchases were delivered in relation to the consumer's residence or place of business.
>
> C. Reviewing where the purchases were made in relation to where the consumer resides or has normally shopped.
>
> D. Comparing any signature on credit slips for the purchases to the

---

[9] The FCBA also requires a creditor to send a written acknowledgment of a borrower's proper notice of a billing error. 12 C.F.R. § 1026.13(c). This requirement is not at issue here.

[10] The CFPB's interpretation of § 1026.13(f) is available at https://www.consumerfinance.gov/rules-policy/regulations/1026/13/#f

- 8 -

   signature of the consumer (or an authorized user in the case of a credit card account) in the creditor's records, including other credit slips.

 E. Requesting documentation to assist in the verification of the claim.

 F. Requiring a written, signed statement from the consumer (or authorized user, in the case of a credit card account). For example, the creditor may include a signature line on a billing rights form that the consumer may send in to provide notice of the claim. However, a creditor may not require the consumer to provide an affidavit or signed statement under penalty of perjury as a part of a reasonable investigation.

 G. Requesting a copy of a police report, if one was filed.

 H. Requesting information regarding the consumer's knowledge of the person who allegedly obtained an extension of credit on the account or of that person's authority to do so.

Official Interpretation § 1026.13(f)-3.i.

  In his Motion for Summary Judgment, Plaintiff argues that Defendant's investigation was unreasonable based on several uncontested facts. (Doc. 42.) First, Plaintiff points out that he called Defendant (referred to as "Call 3" by Plaintiff) and informed the bank that he had never previously contacted them, that he was not the caller in Calls 1 and 2, and he identified the unauthorized transactions. (*Id.* at 10, 14, 17.) During Call 3, Plaintiff was successfully authenticated, whereas the callers in Calls 1 and 2 were not; notably, the caller in Call 2 could not provide his mother's maiden name. (*Id.* at 12, 14.) Furthermore, Plaintiff notes that Defendant reviewed the call recordings only after this litigation commenced. (*Id.* at 12.) Defendant has since admitted that the voice in Calls 1 and 2 differs from Plaintiff's voice in Call 3. (*Id.*) Defendant has also acknowledged that there is no recording of Plaintiff authenticating the disputed charges. (*Id.*)

  In addition, Plaintiff highlights that, in determining whether he benefitted from the charges, Defendant relied solely on its VRU system, which can be compromised by a spoofed phone number, and on merchant documentation indicating that the purchaser provided information matching Plaintiff's name, address, phone number, and email. (*Id.* at 13-14, 17.) Plaintiff argues that it was particularly unreasonable to rely on this

information alone, as an identity thief could easily possess such details. (*Id.* at 15.) Additionally, Defendant testified during its deposition that it no longer believed that Trip Advisor had proof linking the IP address to Plaintiff. (*Id.*) Given these circumstances, Plaintiff claims that Defendant's investigation was unreasonable and failed to meet the standard mandated by the Ninth Circuit's holding in *Gorman*. (*Id.* at 13-15 (citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009) (emphasizing, in the context of the Fair Credit Reporting Act, a separate provision of the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq*, that "[b]y its ordinary meaning, an 'investigation' requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute.").)

In its Memorandum in Opposition to Plaintiff's Motion and in Support of its Cross-Motion for Summary Judgment, Defendant argues that Plaintiff's billing dispute claim is without merit because its investigation was reasonable under the FCBA, and Defendant met all statutory obligations. (Doc. 46 at 10-11, 16-17.) Defendant points out that it obtained details of the SeaWorld and Trip Advisor purchases. (*Id.* at 16.) It contends that this action aligned with two recommendations from the CFPB's guidance: requesting documentation to assist in verifying a claim and identifying where the consumer's purchases were delivered in relation to their residence. (*Id.* at 16-17.)

Defendant emphasizes that the documentation provided by both merchants indicated that (1) the tickets were delivered to Plaintiff's email address; (2) the order details matched Plaintiff's billing address, phone number, and email on file with Chase; and (3) the majority of the tickets purchased bore the last name "Mitchell." (*Id.*) Defendant maintains that, contrary to Plaintiff's argument, it was not obligated to analyze recordings of the calls or examine Plaintiff's IP address. (*Id.*) It further highlights that it received an inbound call from Plaintiff's phone number, which validated the charges through its VRU system. (*Id.* at 17.) Finally, Defendant asserts that even if Plaintiff did not authorize the charges, it is still entitled to summary judgment because it conducted a reasonable investigation and complied with its statutory obligations. (*Id.* at 18-19.)

In his Response to Defendant's Cross-Motion for Summary Judgment, Plaintiff emphasizes his belief that Defendant's investigation was unreasonable because it failed to consider all the information in its possession, including recorded phone calls that Defendant now acknowledges feature two distinct voices. (Doc. 55 at 2.) Plaintiff further argues that Defendant's investigation was unreasonable given the circumstances that suggested an identity thief was responsible for the charges. (*Id.* at 4, 8.) He points out that Defendant recognized that someone posing as him had attempted to validate the charges during the call in which Plaintiff was authenticated. (*Id.*)[11] Plaintiff also reiterates the arguments he made in his opening brief.

In its Reply, Defendant claims that during its investigation, the only evidence of fraud presented by Plaintiff was his assertion that he did not authorize the charges. (Doc. 57 at 10.) Defendant points out that Plaintiff never filed a police report, contacted the merchants, or requested cancellation of the tickets. (*Id.* at 4-5.) Defendant argues that it acted reasonably by focusing its investigation on documentary evidence rather than what it characterizes as "hearsay" in the call recordings. (*Id.* at 5, 7.) Defendant maintains that the weight of the evidence supports its conclusion that Plaintiff authorized the charges. (*Id.* at 9.)

In this case, Defendant's failure to consider all the information in its possession significantly undermines its claim of having conducted a reasonable investigation. As noted by the Ninth Circuit in *Gorman*, 584 F.3d at 1155-56, "[a] provision that required only a cursory investigation would not provide" the intended consumer protection. "[I]nstead, it would allow furnishers to escape their obligations by merely rubber stamping their earlier submissions, even where circumstances demanded a more thorough inquiry." *Id.* at 1156 (discussing the standards of a reasonable investigation in the context of the Fair Credit Reporting Act). Although Defendant is correct that it was not required to adhere to specific investigatory procedures, the circumstances here may

---

[11] In his Response, Plaintiff inaccurately claims that Defendant did not follow *any* procedures suggested by the CFPB. (Doc. 55 at 10.) As Defendant states, it complied with least two. (*See* Doc. 46 at 16-17.)

- 11 -

reasonably have "demanded a more thorough inquiry" due to warning signs of identity theft. *See id.*

A reasonable jury could conclude that Defendant's investigation was unreasonable due to its failure to consider the recorded phone calls, its lack of inquiry about Plaintiff's location on the date of the purchases, and its reliance on merchant documentation and the VRU system. Conversely, a reasonable jury could conclude that the investigation was reasonable due to information in its possession and documentation provided by the merchants that linked Plaintiff to the purchases. Accordingly, summary judgment is not warranted in favor of either Plaintiff or Defendant.

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 42) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (Doc. 46) is **granted in part and denied in part** as set forth herein.

**IT IS FURTHER ORDERED** that Plaintiff's unauthorized use claim under 15 U.S.C. § 1643 is **dismissed**.

**IT IS FURTHER ORDERED** that the parties shall file a Joint Proposed Pretrial Order within **thirty (30) days** of the date this Order is filed.

Dated this 7th day of March, 2025.

_____
Honorable Rosemary Márquez
United States District Judge