**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Conrad Mitchell,<br><br>  Plaintiff,<br><br>v.<br><br>JPMorgan Chase Bank NA,<br><br>  Defendant. | No. CV-22-00435-TUC-RM<br><br>**ORDER** |

Pending before the Court is Defendant's Motion to File Second Motion for Summary Judgment (Doc. 61), to which Plaintiff responded in opposition (Doc. 64), and Defendant replied (Doc. 67). For the following reasons, Defendant's Motion will be denied.

**I.    Factual and Procedural Background**

In his operative First Amended Complaint, Plaintiff asserts a single claim against Defendant under the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666. (Doc. 43.) Plaintiff alleges that Defendant failed to conduct a reasonable investigation into credit card charges he claims were unauthorized. (*Id.*) Defendant responded to Plaintiff's Complaint by filing a Motion to Dismiss, arguing that its duties under the FCBA were never triggered because Plaintiff failed to provide written notice of the billing dispute, as required by the statute. (Doc. 17.)[1] The Court denied Defendant's Motion to Dismiss,

---

[1] A creditor's duties under the FCBA are triggered when a creditor receives "written notice" from the cardholder that:
  (1) sets forth or otherwise enables the creditor to identify the name and

holding that "it is reasonable to infer that Defendant received actual notice of the critical information identified by statute" to allow it to initiate an investigation. (Doc. 22 at 6.) Furthermore, the Court found that it was also "reasonable to infer that Defendant waived the written-notice requirement by acknowledging and investigating Plaintiff's dispute and instructing Plaintiff to call if he had questions or saw additional unauthorized activity on his account." (*Id.*)

Following discovery, Plaintiff filed its Motion for Summary Judgment on June 7, 2024. (Doc. 42.) Defendant filed its Response and Cross Motion for Summary Judgment on July 1, 2024 (Doc. 46), and a Reply on August 14, 2024 (Doc. 57). On August 28, 2024, the District of New Jersey issued an order granting a credit card issuer's motion for summary judgment on an FCBA claim in *McIntosh v. Capital One Bank (USA), N.A.*, No. CV 23-3144 (RMB-AMD), 2024 WL 3964234 (D.N.J. Aug. 28, 2024). On March 7, 2025, this Court granted in part and denied in part Defendant's Motion for Summary Judgment, dismissing Plaintiff's newly brought unauthorized use claim but allowing the FCBA claim to proceed. (Doc. 60.) The Court denied Plaintiff's Motion for Summary Judgment. (*Id.*)

On March 28, 2025, Defendant filed the pending Motion to File Second Motion for Summary Judgment, which relies on the August 28, 2024 order in *McIntosh*. (Doc. 61.) On April 11, 2025, the parties filed a Joint Proposed Pretrial Order. (Doc. 66.) The Court has set a pretrial conference for May 14, 2025. (Doc. 68.)

**II.   Discussion**

Defendant seeks leave to file a second motion for summary judgment after the dispositive motion deadline set by this Court's Scheduling Order. (Doc. 61.) Defendant argues that *McIntosh* supports its position that it did not waive the FCBA's written notice

---

    account number (if any) of the obligor,
    (2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and
    (3) sets forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error[.]
15 U.S.C. § 1666(a)(1)-(3).

- 2 -

1    requirement because, as in *McIntosh*, the undisputed facts here show that the operative
2    credit card agreement reserved Defendant's right to require billing disputes to be
3    submitted in writing. (*Id.* at 4-5.) Defendant contends that, based on the findings in
4    *McIntosh*, summary judgment is warranted as a matter of law. (*Id.* at 5.) Defendant also
5    maintains that granting leave would not prejudice Plaintiff. (*Id.*)[2]

6    Plaintiff opposes Defendant's request to file a second motion for summary
7    judgment. (Doc. 64.) In his Response, Plaintiff argues that the waiver issue has already
8    been fully briefed and resolved by the Court, and that Defendant fails to meet the
9    standards for good cause and excusable neglect to amend the dispositive motion deadline.
10   (*Id.* at 7-8.) Additionally, Plaintiff asserts that the *McIntosh* decision is neither new nor
11   applicable to this case, as it only involved telephonic notice, while this case involves
12   electronic communications initiated by Defendant. (*Id.* at 8-9.) Plaintiff further argues
13   that the language in Defendant's cardholder agreement—which states that consumers
14   "may call or notify us electronically, but if you do we are not required to investigate any
15   potential errors"—was rendered moot by Defendant's decision to investigate Plaintiff's
16   dispute. (*Id.* at 10.) Finally, Plaintiff maintains that allowing Defendant to disclaim the
17   validity of the electronic communications it initiated would enable Defendant to always
18   evade its duty to investigate under the FCBA. (*Id.* at 10-11.)[3]

19   In its Reply, Defendant emphasizes that *McIntosh* is applicable to this case. (Doc.
20   67 at 4-5.) Defendant further argues that it acted diligently upon learning of *McIntosh*,

---

[2] Defendant argues that leave to file a second motion for summary judgment should also be granted because Plaintiff's counsel recently stated in an email that "[t]his is not a FCBA issue, but an Unauthorized Use claim." (Doc. 61 at 3 (quoting Doc. 62-1 at 2).) As Defendant points out, the FCBA claim is the sole remaining claim in this case; the Court dismissed Plaintiff's newly brought unauthorized use claim on summary judgment. (Doc. 60 at 6-12.) Plaintiff's Response does not address this argument. However, the Court finds that this email exchange does not justify filing a second motion for summary judgment. Plaintiff notes in his Response that his Complaint contained "a single claim under" the FCBA, his Response indicates that he continues to pursue this claim, and this Court's Summary Judgment Order preserved the FCBA claim for trial. (Doc. 64 at 3; Doc. 60.)

[3] In his Response, Plaintiff requests that the Court "[a]ward Plaintiff costs, attorneys' fees and sanctions for interposing its motion in bad faith." (Doc. 64 at 12.) The Court will decline Plaintiff's request. Although ultimately unpersuasive, Defendant's Motion relied on a relevant out-of-district decision that, in Defendant's view, warranted further consideration. This conduct does not rise to the level of bad faith.

that Plaintiff will not suffer prejudice if Defendant is permitted to file a second motion for summary judgment, and that it is entitled to seek leave to do so under Rules 16(b)(4) and 6(b)(1)(B) of the Federal Rules of Civil Procedure. (*Id.* at 1-4.)

Under Federal Rule of Civil Procedure 16(b)(4), deadlines in a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Rule 6(b)(1)(B) permits a court to extend a deadline after its expiration "for good cause" if the requesting party "failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). To determine whether a party has shown excusable neglect, the Court considers at least four equitable factors: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. United States Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000).

Here, the first three *Bateman* factors weigh against a finding of excusable neglect. Plaintiff would face prejudice if Defendant were allowed to relitigate a legal issue based on a decision that was available but undisclosed for nearly seven months. The delay in raising the *McIntosh* case is substantial, and Defendant offers no justification for this delay. The fourth factor—whether the movant acted in good faith—does not weigh against Defendant, although the timing of its Motion indicates a lack of diligence. On balance, Defendant's lack of diligence precludes a finding of excusable neglect under Rule 6(b)(1)(B) and good cause under Rule 16(b)(4).

Even assuming Defendant had shown good cause to file a second motion for summary judgment after expiration of the dispositive motion deadline, a motion based on *McIntosh* would be futile. *McIntosh* is merely persuasive authority, and it is factually distinguishable, as it involved only oral notice, not electronic communications invited by the defendant. In *McIntosh*, the plaintiff called Capital One to dispute charges and admitted "that she never disputed the charges in writing." 2024 WL 3964234, at *1. The district court granted summary judgment for Capital One, holding that the FCBA's protections require written notice and are not triggered by a phone call alone. *Id.* at 2.

The court further concluded that the bank's voluntary investigation did not constitute waiver because it had not "clearly and unmistakably relinquished its statutory right to written notice under the FCBA," and its cardholder agreement expressly preserved that right. *Id.* at 3.

By contrast, in this case, Defendant sent Plaintiff email alerts requesting that Plaintiff verify the disputed transactions, and Plaintiff contends that he responded electronically in direct reply by clicking the button in the email indicating that he did not authorize the disputed charges.[4]  (Doc. 42 at 9-10; Doc. 43 at ¶ ¶ 7, 10.)  These facts render Defendant's insistence on strict compliance with boilerplate language in a separate credit card agreement—specifically, that Plaintiff must send a physical letter to a Delaware P.O. Box to trigger protections under the FCBA—entirely unreasonable, particularly where Defendant itself initiated the dispute process electronically and invited Plaintiff's response by that very method.[5]

As Plaintiff argues, Defendant's position would, if accepted, enable it to always avoid its duty to investigate under the FCBA by soliciting electronic responses from consumers while simultaneously disclaiming any obligation to act on them.  As this Court previously explained in its Order denying Defendant's Motion to Dismiss, "[t]o rule otherwise would be to empower credit institutions to accept a person's oral notice of an error, even lull the person into a false sense of security that the person had timely and properly notified the corporation of a perceived error." *Savitz v. Citizens Bank, N.A.*, No.

---

[4] In its Reply, Defendant incorrectly states that "Plaintiff now argues, for the first time, that he 'promptly responded, electronically'" to Chase's email alerts. (Doc. 67 at 4 (quoting Doc. 64 at 9).)  Plaintiff made this same argument in his Motion for Summary Judgment.  (Doc. 42 at 9-10; Doc. 43 at ¶ ¶ 7, 10.)  Defendant correctly notes that in Plaintiff's Response to Defendant's Requests for Admissions, Plaintiff admitted that he "did not provide written notice to Chase of [his] dispute." (Doc. 47-2 at 3.)

[5] Chase's credit agreement is identical in relevant part to the agreement in the *McIntosh* case and provides:
> If you think there is an error on your statement, write to us on a separate sheet at Customer Service, P.O. Box 15299, Wilmington, DE 19850-5299.
> . . . .
> You must notify us of any potential errors in writing.  You may call us or notify us electronically, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

(Doc. 62-3 at 3, 9.)

19cv0873, 2020 WL 128573, at *4 (W.D. Pa. Jan. 10, 2020). That concern is even more pronounced here, where Defendant invited Plaintiff's electronic response, "only to later claim that despite launching an investigation into the alleged error, the credit institution was never properly notified – in writing – and thus, does not need to adhere to or honor the other portions of the FCBA." *See id.* Defendant's strained interpretation of the statute provides no basis for revisiting this Court's prior ruling.

Because Defendant has not shown good cause or excusable neglect, and a motion for summary judgment based on *McIntosh* would be futile, the Court will deny Defendant's Motion.

**IT IS ORDERED** that Defendant's Motion to file Second Motion for Summary Judgment (Doc. 61) is **denied**.

Dated this 23rd day of April, 2025.

_____
Honorable Rosemary Márquez
United States District Judge

- 6 -